**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 13-4029**

———————————

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

ERIC LARON BROWN, a/k/a Little E,

              Defendant - Appellant.

———————————

Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (2:12-cr-00418-DCN-1)

———————————

Submitted: June 4, 2013          Decided: July 31, 2013

———————————

Before NIEMEYER and DIAZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————————

Affirmed by unpublished per curiam opinion.

———————————

John Robert Haley, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, South Carolina, for Appellant. William N. Nettles, United States Attorney, Nathan S. Williams, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, Eric Brown challenges the justification for a traffic stop and subsequent search, which led to his conviction for drug trafficking and the illegal possession of a firearm. Finding his arguments unpersuasive, we affirm.

I

On March 5, 2012, Charleston County (South Carolina) Sheriff's Deputies Jay Christmas and Michael Buenting observed a Mazda SUV traveling at approximately 50 miles per hour with "less than a car length in between his front bumper and the back bumper of the car in front of him," in violation of South Carolina law. The deputies agreed that the SUV was "following too closely and was a traffic hazard."

As the deputies turned on their blue lights and siren to effect a stop of the SUV, they observed "something splatter[] against the back glass" and both the driver and the passenger engaging in "furtive movements," such as digging in the center console.

Once the vehicle was stopped, Deputy Christmas spotted marijuana seeds on the back floorboard and a digital scale in the pocket behind the passenger's seat. Deputy Buenting asked Harold Austin, the driver, to exit the vehicle and step to the rear. The deputies then conferred with each other to confirm

2

that each smelt burnt marijuana in the vehicle. Deputy Christmas found the smell was so strong that he believed it had been smoked earlier that day. He asked Austin about the smell, and Austin replied that "some girls may have smoked marijuana."

When Deputy Buenting told Austin the reason for the stop, Austin "acknowledged that and said he wasn't paying attention." Buenting then began to issue a warning citation, as Deputy Christmas reviewed the vehicle's documentation. He discovered that the SUV was a rental vehicle, and the rental agreement was not listed in either Austin's name or the name of his passenger, Eric Brown. Austin explained that his aunt had rented the vehicle for him. When Deputy Christmas asked Austin for consent to search the vehicle, Austin consented.

Deputy Christmas noticed that the passenger, Eric Brown, was "grasping with his left hand on his left leg" with such force that his arm muscles were tense. When Deputy Christmas tried to engage Brown in conversation, Brown did not make eye contact. Following standard procedure, Deputy Christmas asked Brown to step outside of the vehicle so that the officers could safely search it. As Brown stepped out of the vehicle, perceptively slowly, Christmas noticed a white bag, which looked like cocaine, sitting by his leg. (It was later confirmed to be cocaine). Brown also continued to grab his left leg as he exited, causing Deputy Christmas to suspect that Brown was

3

holding something, probably a gun, under his pants. When Deputy Christmas asked Brown if he would consent to a search, Brown hesitated at first and then consented.

As Deputy Christmas patted Brown's left leg, he believed he felt an object consistent with a gun. A gun then fell out of Brown's pants -- a loaded .380 caliber Smith & Wesson pistol. As Deputy Christmas continued his pat down, he felt a large lump between Brown's buttocks, which subsequently turned out to be a bag of cocaine. And after Brown was taken to the Charleston County Detention Center and strip-searched, officers found two additional bags of crack cocaine. Brown acknowledged that the various bags of cocaine were his.

After Brown was indicted for various drug and gun offenses, he filed a motion to suppress the evidence obtained during the stop of the SUV and the subsequent search. He argued that the stop occurred "without reasonable suspicion and/or probable cause" and that "he did not consent to the search of his person and that there was not reasonable suspicion to support a frisk of his person." The district court rejected both reasons and denied Brown's motion. Brown then entered a conditional guilty plea to drug trafficking and the illegal possession of a firearm, as well as other unrelated offenses, preserving for appeal a challenge to the district court's ruling on his motion

to suppress. The district court sentenced Brown to 96 months' imprisonment, and this appeal followed.

II

Brown first contends that the traffic stop was unsupported by probable cause because there were insufficient indicia of reliability that a traffic offense had been committed. We find the argument unpersuasive. "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008). In this case, Deputy Christmas and Deputy Buenting testified that, as they proceeded down the highway in a lane parallel to the lane in which Austin's SUV was proceeding, each observed the SUV traveling at about 50 miles per hour within a car length of the vehicle in front of it. They both had a clear line of sight and concluded that in the circumstances, the distance between vehicles was "way too close" and constituted a "traffic hazard," in violation of South Carolina law. See S.C. Code Ann. § 56-5-1930(a).

Brown nonetheless claims that the district court erred in failing to apply our decision in United States v. Sowards, 690 F.3d 583, 592 (4th Cir. 2012), where we concluded that an

5

officer's estimate that a vehicle was exceeding the speed limit by 5 miles per hour, traveling 75 miles per hour in a 70 mile-per-hour zone, was too nuanced to justify finding an infraction without having "additional indicia of reliability." But here, there was no such questionable estimate. Rather, the officers actually saw the distance between Austin's SUV and the vehicle in front of him as they traveled parallel to it in a different lane. The record contains no facts that cast doubt on the accuracy of the deputies' observations. Accordingly, we affirm the district court's conclusion that the traffic stop was supported by probable cause.

Brown's argument that he did not consent to the search of his person and that the search was not otherwise supported by reasonable suspicion is likewise unpersuasive. The record is undisputed that Brown consented to the search of his person, albeit reluctantly at first, as manifested by a short delay in giving consent. As the district court correctly observed, "reluctantly-given consent is not necessarily involuntarily-given consent." Indeed, pausing to think about whether to give consent suggests thoughtfulness, not coercion.

Apart from Brown's consent, Deputy Christmas also had reasonable suspicion to believe that Brown was committing the offenses of possessing controlled substances and possessing a firearm. Christmas saw marijuana seeds on the floor, a digital

6

hand scale in the back pocket of the passenger's seat, and he smelled what he believed to be recently burned marijuana. He also saw a white bag that he suspected to be cocaine next to Brown's leg. In addition to his view of the drugs, Deputy Christmas observed that Brown was continually "grasping his left hand on his left leg" to protect what Deputy Christmas suspected was, and what turned out to be, a firearm.

Accordingly, we also affirm the district court's conclusions that Brown consented to the search of his person and that, in any event, the search was justified by reasonable suspicion.

The judgment of the district court is accordingly

AFFIRMED.